ROBERTSON, Justice:
Leroy McCray was convicted in the Circuit Court of the First Judicial District of Hinds County, Mississippi, of the crime of murder, and was sentenced to -life imprisonment in the penitentiary.
About 7 o’clock p. m. on October 8, 1972, William H. Kelly was killed during the course of an armed robbery. Kelly owned and operated the Beasley Road Shopette on Beasley Road. McCray and Clem Jimpson *807 were jointly indicted, but were tried separately and Jimpson was convicted on December 7, 1972. Two eyewitnesses placed the appellant and Jimpson together at Beasley Road Shopette, the sceile of the crime, just minutes before the shooting and immediately after it. Jimpson pulléd a pistol on Kelly, and Kelly drew his pistol in defense. Several shots were exchanged. Jimpson was not hit, but Kelly was killed with one shot which entered his back in the right shoulder area.
Jimpson and McCray were both pifcked up on October 9, 1972, the day after the shooting, and about 9:30 p. m. that night, after his Miranda rights had been fully fex-plained to him and he had signed a written waiver, McCray made a full statement of his part in it. The statement was reduced to writing, signed by McCray and witnessed by Lt. Glenn Cumberland and Sgt, James D. Taylor of the Jackson Police Department. In his statement, McCray said he and Jimpson went to the Shopette together, that Jimpson and Kelly exchanged shots and that he, McCray, drove Jimpson from the scene to their respective homes. McCray stated that he and Jimpson lived on Edwards Avenue across the street from each other. Cumberland and Taylor both testified that his rights were read to McCray and explained to him, and that he was given a copy of his rights to read before he signed the waiver. Both officers testified that no threats were made, no duress applied, and no promises made.
The first assignment of error was that the trial court should not have admitted into evidence the confession because McCray did not intelligently waive his rights, especially his right to remain silent and his right to have counsel present. This ground of objection was asserted for the first time on appeal. At the preliminary hearing, the grounds of objection to the admission of his statement were that there was not a lawful arrest and that the corpus delicti had not been proved.
This Court said in Stringer v. State, 279 So.2d 156 (Miss.1973) :
“The statement of one or more specific grounds of objection to the introduction of evidence is a waiver of all other grounds of objection.” 279 So.2d at 158.
We also said upon the first appeal of this case, wherein the conviction and sentence were reversed because the conviction of a co-indictee, Clem Jimpson, was improperly admitted into evidence, that:
“We have maturely considered the argument and authorities advanced in support of the inadmissibility of the confession and are of the opinion that it is without merit. Our primary concern is with the consequences emanating from the introduction of a certified copy of the co-indictee’s conviction and sentence.” McCray v. State, 293 So.2d 807-08.
The second assignment of error was that the trial court erred in refusing to grant appellant’s instructions 12, 13, 14 and 15. These instructions were properly refused by the court. They all had to do with a completely circumstantial evidence case, and required that the jury be able to find appellant guilty “beyond every reasonable doubt and to the exclusion of every reasonable hypothesis consistent with his innocence.” There was both direct and circumstantial evidence in this case. The confession itself was direct evidence.
In Nobles v. State, 241 So.2d 826 (Miss.1970), we held:
“The objection to the State’s second instruction based upon the theory of guilt if proven beyond a reasonable doubt rather than to the exclusion of every other reasonable hypothesis is not an error because the testimony in this case is not based wholly upon circumstantial evidence. Here we have the confession of the defendant that he had been in ‘Valley Auto.’ (Citations omitted).” 241 So.2d at 828.
*808 In his third assignment of error the appellant contends that “The circuit court erred in allowing the Appellant and his witness (Clem Jimpson) to be impeached on a collateral issue or immaterial matter.” The State’s case against appellant was based on these conditions: that McCray and Jimpson knew each other well, that they were together at the scene of the crime both before and after it was committed, that they arrived and departed the scene in the same car, and that they, in fact, committed the crime together.
The State did not deny that Jimpson actually fired the fatal shot but the State’s case was that McCray accompanied Jimp-son, knew what they were at the Shopette for, agreed with the purpose of their visit, and actually participated in the crime.
After the State rested, Jimpson testified as a witness for the appellant and admitted that he, Jimpson, shot Kelly. He denied on cross-examination that he even knew the appellant, and denied that appellant assisted him or was even present. Jimpson denied that he could write and denied that he ever wrote appellant. He finally admitted that he could write his name, and he was asked, while he was on the witness stand, to write certain words, which he did.
In rebuttal the State called as a witness the jailer who was in charge of the jail when McCray and Jimpson were first confined. He testified that Jimpson sent a letter to McCray while in jail. The letter was not signed, was addressed to “Dig” and advised “Dig” to stick to his story and to make no deal with the State, that he would help Dig get out of it.
Thomas L. Packer, a handwriting expert with the Crime Lab of the Jackson Police Department, was then called, and was qualified as an expert on handwriting to the satisfaction of the court. Packer testified that he carefully compared Jimpson’s signature and the handwriting specimen given on the stand, with the letter addressed to Dig, and that in his considered opinion the letter was entirely written by Jimpson.
It is perfectly clear and obvious that this was impeachment on a very material and very important matter, a matter going to the very heart of the case, and was by no means impeachment on a collateral or immaterial matter. The court was correct in allowing this testimony. The Court was also correct in allowing Packer to testify as an expert witness in the field of handwriting analysis.
There being no fatal error committed in the trial of this case, the conviction and sentence are affirmed.
Affirmed.
RODGERS, P. J., and PATTERSON, INZER, SUGG, WALKER and BROOM, JJ., concur.